UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| STANDARD RETIREMENT SERVICES, INC., ) ) ) | Civil Action No. 5: 14-026-DCR |
| Plaintiff, ) ) | |
| V. ) ) | |
| KENTUCKY BANCSHARES, INC., ) STOLL KEENON OGDEN PLLC ) SHARON MATTINGLY, ESQ., ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. ) | |

\*\*\*　\*\*\*　\*\*\*　\*\*\*

This declaratory judgment action is pending for consideration of the motions to dismiss filed by defendants Kentucky Bancshares, Inc. ("Kentucky Bank"), Stoll Keenon Ogden PLLC ("SKO"), and Sharon Mattingly. [Record Nos. 4, 6] Plaintiff Standard Retirement Services, Inc. ("Standard") opposes the motions. [Record Nos. 8-9] Standard also moves the Court to disqualify defense counsel due to an alleged conflict of interest and to suspend the Court's summary judgment determination until the motion to disqualify has been considered. [Record Nos. 20, 21] For the reasons discussed below, the defendants' motions will be granted and the plaintiff's motions will be denied.

**I.**

The controversy arises following the termination of the Kentucky Bancshares, Inc. Retirement Plan and Trust (the "Plan"). [Record No. 1, p. 5] Standard provided retirement, ministerial, and actuarial services for Kentucky Bank, including those

-1-

concerning the Plan. [*Id.*] Standard also assisted Kentucky Bank and its legal counsel, SKO, when Kentucky Bank endeavored to terminate the Plan. [*Id.*] The Plan terminated on December 31, 2008. [Record No. 4-1, p. 2]

In its capacity as federal regulatory agency, the Pension Benefit Guaranty Corporation ("PBGC") audited Kentucky Bank's Plan termination. [Record No. 4-1, p. 2] On April 8, 2011, following an administrative proceeding, PBGC issued a determination letter summarizing its findings and identifying several problems with the termination method. [Record No. 1, p. 3] Kentucky Bank was directed to distribute approximately $1.3 million in additional assets to Plan participants. [Record No. 4-1, p. 2] At that time, Kentucky Bank and Standard agreed to toll any potential claims regarding the Plan termination. [Record No. 1, p. 6] Kentucky Bank requested that PBGC reconsider its decision; however, on May 9, 2012, PBGC issued a final determination affirming its initial findings. [*Id.* at p. 4] On May 23, 2013, PBGC filed suit against Kentucky Bank in this Court, demanding that Kentucky Bank distribute the additional assets. [*Id.*] *See Pension Benefit Guar. Corp. v. Ky. Bancshares, Inc.*, 2014 U.S. Dist. LEXIS 34224 (E.D. Ky. 2014). SKO represented Kentucky Bank in the action, which has been dismissed on summary judgment and affirms PBGC's determination. [Record No. 4-1, p. 3] *Pension Benefit*, 2014 U.S. Dist. LEXIS 34224 at *30. Standard was not made a party to the action between PBGC and Kentucky Bank. [*Id.*]

On January 27, 2014, Standard initiated this action under 28 U.S.C. § 2201. [Record No. 1, p. 1] The plaintiff seeks a declaration that it is not liable to Kentucky

Bank for defense costs or judgment imposed in the earlier action or, in the alternative, that Standard is entitled to indemnification from SKO and Mattingly for any liability. [*Id.* at p. 7] Thus, the declarations require a determination of liability and indemnity.[1] Because an indemnity adjudication would derive from a finding of liability, the Court will consider the issues together. The defendants assert that a declaratory judgment action to litigate non-liability is impermissible under federal law. As a result, they have moved the Court to dismiss this matter for lack of subject-matter jurisdiction. [Record No. 4-1, p. 4] The defendants also argue that the issues are not ripe, pending a determination by this Court in the PBGC action. [Record No. 4-1, p. 6] However, as the earlier action was dismissed on summary judgment grounds in May, 2014, this argument is moot.[2] *Pension Benefit*, 2014 U.S. Dist. LEXIS 34224.

**II.**

Kentucky Bank and SKO move this Court to dismiss for lack of subject matter jurisdiction. This case unquestionably meets the basic standard for diversity jurisdiction under 28 U.S.C. § 1332. Each defendant is a citizen of the Commonwealth of Kentucky and the plaintiff is a citizen of Oregon. [Record No. 1, p. 3] Further, the amount in controversy exceeds $1.3 million. [*Id.*]

However, even when a claim otherwise satisfies subject matter prerequisites, district courts retain discretion to determine "whether and when to entertain an action

---

[1] Because the existence of a contract between the parties was not alleged in the complaint, the Court presumes that the plaintiff's request for a declaration of non-liability sounds in tort law. [Record No. 1]

[2] The Court notes, however, that the earlier action has been appealed. *Pension Benefit, Guar. Corp. v. Ky. Bancshares, Inc.*, No. 13-143, 2014 U.S. Dist. LEXIS 34224 (D. Ky. 2014), *appeal docketed*, No. 14-5573 (6th Cir. May 14, 2014).

under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (the "Act"), provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act "confers discretion on courts, not rights on litigants," and the "propriety of issuing a declaratory judgment may depend on equitable considerations." *American Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) (citing *Green v. Mansour*, 474 U.S. 64 (1985)). Thus, this Court is under no compulsion to exercise jurisdiction.

The Sixth Circuit has articulated five factors to guide a district court in determining whether to exercise jurisdiction under the Act. Those factors are whether:

1. the declaratory action would settle the controversy;

2. the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

3. the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*;'

4. the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

5. there is an alternative remedy which is better or more effective.

*AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004) (citing *Grand Trunk Western Ry. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

### A. Settlement of the Controversy

The Sixth Circuit has repeatedly held that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812-13 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 91 F.2d 460, 463 (6th Cir. 1986)). Standard asks this Court to declare, *inter alia*, that it "never gave advice to [Kentucky Bank] regarding the proper construction or interpretation of the statutes and regulations at issue in the Lawsuit and was barred by Kentucky law from doing so." [Record No. 1, p. 8] Standard also seeks a declaratory judgment that it is not liable for "defense costs of the Lawsuit and for any judgment," based on the allegation that it did not provide legal advice to Kentucky Bank. [*Id.* at p. 9]

The issue of Standard's liability for defense and judgment costs is inextricably tied to its overall liability for its part in the Plan termination. Importantly, Standard's Complaint does not request a determination of the larger dispute. Deciding the narrow issues before the Court would confuse rather than settle the wider controversy of a negligence claim against Standard. In fact, entry of a judgment by the Court could subject the parties to conflicting rulings on key questions of fact, such as the nature and extent of Standard's role in the Plan termination. Essentially, this action would require the Court to determine the parties' obligations in a vacuum, without addressing the extent of Standard's liability beyond the first action. Sixth Circuit precedent suggests that, while "declaratory actions might clarify the legal relationship […] they do not settle the

ultimate controversy between the parties which is ongoing." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). *See also Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266 (6th Cir. 2007) (district court erred in exercising jurisdiction where declaratory judgment would not settle the separate action); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (unpublished). Thus, the first factor counsels against exercising jurisdiction.

B.     **Clarification of Legal Relations**

Standard argues that a declaratory judgment would establish the useful purpose of clarifying the legal relationship among the parties, allowing the plaintiff to reform its behavior to the law and stop the potential accrual of damages. [Record No. 8, p. 6] However, the Court notes that Standard will not face any liability unless Kentucky Bank files suit.

The Sixth Circuit has noted that, generally, "when a putative tortfeasor sues an injured party for a declaration of non-liability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'" *AmSouth*, 386 F.3d at 786. Standard acknowledges the general rule, but claims to fall within the exception that "when some additional harm, not merely waiting for the natural plaintiff to sue, will befall the declaratory plaintiff in the meantime." *Id.* However, the Court is not persuaded by this argument. The "useful purpose" factor is satisfied where a party abates a marketing campaign under threat of a trademark infringement suit or faces breach of contract claims while the contract provides for ongoing obligations. In these instances, a declaratory judgment clarifies legal duties going forward rather than redressing past

harm. *See AmSouth*, 386, F.3d at 786. The burden of retaining relevant documents in anticipation of litigation is hardly a compelling example of additional harm. [*See* Record No. 8, p. 8.] This Court considers Standard's argument that a finding of a duty to defend may result in additional harm in the form of defense costs. [*Id.* at p. 7] But Kentucky Bank has not filed a claim against Standard to compel its defense and Standard has not shown a sufficient basis (contractual or otherwise) for the determination of the duty's existence. Moreover, because the PBGC action has been dismissed, the opportunity to defend has passed.

The plaintiff has not demonstrated that it will incur further loss, and the "threat of a suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)). Although Standard may have to wait to see whether Kentucky Bank files suit, this result does not outweigh the right of a plaintiff to choose the forum and the time (if at all) to assert his claim. Finally, in light of the tolling agreement between Standard and Kentucky Bank, it appears that the parties anticipated allowing a period of time to elapse before Kentucky Bank asserts its claims. [Record No. 1, p. 6] Thus, the second factor also weighs in favor of dismissal of this action.

### C. Procedural Fencing

The third factor is intended to prevent declaratory plaintiffs from forum-shopping. The Court must evaluate whether the plaintiff "has filed in an attempt to get its choice of forum by filing first." *Scottsdale*, 513 F.3d at 555. Standard signed a tolling agreement with Kentucky Bank and now alleges it has been harmed by waiting for Kentucky Bank

to sue. The facts suggest that Standard filed the declaratory action not to resolve conflicts hindering its normal behavior, but to gain a procedural advantage. *See AmSouth*, 386 F.3d at 788 ("A review of the factual record leads to the unavoidable conclusion that procedural fencing has occurred" where the parties signed tolling agreements and indicated their willingness to consider settlement). However, even assuming that Standard acted in good faith, the ultimate outcome of its procedural behavior has been to wrest this case away from the natural plaintiff's control. This weighs against this Court exercising jurisdiction.

### D. Friction Between Federal and State Courts

The fourth factor weighs in favor of exercising jurisdiction because Kentucky Bank has not yet filed – and may never file – suit against Standard. To determine whether a declaratory judgment would increase the friction between state and federal court, district courts weigh the following three sub-factors: (i) whether the state court's fact-finding is necessary to the declaratory judgment; (ii) which court, federal or state, is in a better position to resolve the issues; and (iii) whether the issue in the federal action implicates important state policies and thus more appropriate for state court. *Scottsdale*, 513 F.3d at 560. The plaintiff correctly notes that the PBGC action did not involve Standard's liability or indemnification and there is no suit pending in state court. [Record No. 8, p.11] Therefore, no current friction exists between the state and federal courts. As a result, the fourth factor weighs in favor of this Court exercising jurisdiction.

### E. Alternative Remedies

The fifth factor favors dismissal. A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Scottsdale*, 513 F.3d at 562. Kentucky law provides an alternative remedy under to KRS § 418.040, the state declaratory judgment statute. Kentucky courts are in a superior position to resolve indemnity and tort liability disputes premised on state law. *See Travelers*, 495 F.3d at 273 (finding that the alternative remedies of a state declaratory judgment or indemnity action "weighed against federal discretionary jurisdiction"). Another possible remedy is for the declaratory plaintiff to file an action at the conclusion of the parties' tolling agreement. Finally, the traditional remedy is available: a suit in which Kentucky Bank brings its claims, if any, against Standard, allowing the appropriate court to consider the entire controversy. The traditional remedy provides the parties with the procedural safeguards required by the law, while a declaratory judgment action here would force the natural plaintiff to litigate a claim which it may not want to litigate, at a time which might precede its determination of the full extent of damages, and in a forum chosen by the putative tortfeasor.

### III.

Kentucky Bank is represented in thsi action by Dinsmore & Shohl LLP ("Dinsmore"). Standard moves to disqualify Dinsmore as defense counsel, alleging a conflict of interest based upon an advisory relationship with a sister-subsidiary of Standard's parent corporation. [Record No. 20, p. 1] Dinsmore has allegedly represented Standard Insurance Company ("SI") in several pending lawsuits in Kentucky. [Record No. 20-1, p. 1] Both Standard and SI are subsidiaries of StanCorp Financial Group, Inc.

[*Id.*] Therefore, Standard argues, the two companies are the same "client" for conflict-of-interest purposes, and Dinsmore's representation of Kentucky Bank is directly adverse to Standard's interests. [*Id.* at p. 2]

In response, Kentucky Bank argues that the two subsidiaries should be considered legally distinct entities under Kentucky law. [Record No. 22, p. 2] Kentucky Bank urges the Court to find that a lawyer for an organization is not barred from representation adverse to an affiliate organization in an unrelated matter unless the circumstances suggest that the affiliate itself is a client of the lawyer. [*Id.* at p. 24] However, Kentucky Bank argues that the Court need not even reach the issue if it finds that no confidential information was shared between Standard and Dinsmore. [*Id.*]

All attorneys are bound by the local rules of the court in which they appear. *PNC Bank, N.A. v. Person*, 2007 U.S. Dist. LEXIS 33172 at *6 (W.D. Ky. May 3, 2007) (citing *Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 77363 at *4 (E.D. Ky. Oct. 20, 2006)). Thus, under Local Rule 83.2(a)(4), the attorneys at bar are subject to the Kentucky Rules of Professional Conduct and the judicial decisions interpreting those Rules.[3]

Kentucky Supreme Court Rule 1.7(a) forbids the appearance of counsel when "the representation of one client will be directly adverse to another client" or if "there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to another client." Comment 34 to this rule advises that a "lawyer who

---

[3] The Kentucky Rules of Professional Conduct track the language of the American Bar Association's Model Rules of Professional Conduct.

represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary." Ky. Sup. Ct. R. 1.7 cmt. 34 (2009). Kentucky courts have held that "representation of a client in one matter does not in itself create any lawyer-client relationship with respect to other, unrelated matters." *Spears v. Overbey*, 170 Fed. Appx. 379, 386 (6th Cir. 2006) (citing *In re Advisory Opinion*, 361 S.W.2d 111 (Ky. 1962). Moreover, disqualification of counsel "is a drastic measure which courts should be hesitant to impose except when absolutely necessary." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001).

The association between Dinsmore and SI began in November 2012, when SI's Chicago counsel, Smith von Schleicher & Associates ("SVS") hired Dinsmore's Louisville office to assist in multiple lawsuits in Kentucky. [Record No. 22-12, p. 1] Dinsmore's affidavits indicate that the firm did not receive confidential information either from Standard or SI. [Record No. 22-12 and 22-13] In fact, Dinsmore's role in the suits lasted only six months and it billed less than eight hours of work. [Record No. 22-12, p. 3] No further legal services were provided to SI before Dinsmore's representation of Kentucky Bank against Standard in June 2013. [*Id.*] Five months later, SVS sought Dinsmore's assistance as local counsel in another group of ERISA cases, again on behalf of SI. [*Id.* at 4]

Although the plaintiff argues that Standard and SI are the same client based upon their common parent corporation, Comment 34 to Rule 1.7 specifically rejects this notion. Standard fails to provide compelling evidence that the connection between the

two corporations, beyond their common ownership, should bar Dinsmore from accepting adverse representation.

Even assuming *arguendo* that Dinsmore's attorney-client relationship extended to Standard, Standard fails to satisfactorily show that Dinsmore acquired confidential information from SI sufficient to ripen the representation into a disabling conflict of interest. Even under the factual scenario presented by the plaintiff, the relationship between SI and Dinsmore did not involve the current litigation. Without specific evidence that privileged information relevant to this case was transmitted to Dinsmore, the Court is unwilling to disqualify counsel based on unsupported allegations. Having considered the evidence, the Court finds that there is not a conflict that would prevent Dinsmore from representing the defendant.

**IV.**

After examining the *Grand Trunk* factors, the Court finds that four of the five factors do not support this Court exercising jurisdiction over the action. Standard has failed to show that a declaratory judgment would settle the controversy among the parties and serve a useful purpose. Moreover, Standard appears to be using this action to gain a procedural advantage. Further, an action in an appropriate Kentucky court would provide a more efficient alternative remedy. The Court concludes that exercising jurisdiction would be improper in this case. Additionally, Standard's motion to disqualify counsel lacks merit. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff's motion to disqualify counsel [Record No. 20] is **DENIED**.

2. Defendants' motions to dismiss [Record Nos. 4, 6] are **GRANTED**.

3. Plaintiff's action for declaratory judgment [Record No. 1] is **DISMISSED** without prejudice.

4. Plaintiff's motion to suspend [Record No. 21] is **DENIED** as moot.

This 24th day of September, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge